*In re* METROPOLITAN EL. R. CO.

*In re* VOGT *et al.*

(*Supreme Court, Special Term, New York County.* August 22, 1889.)

1. EMINENT DOMAIN—CONDEMNATION AFTER TAKING.
   A railroad company may institute proceedings to condemn land after the road has been constructed.

2. SAME—STATUTE OF LIMITATIONS.
   Where an elevated railroad company has constructed and is operating its road, without having purchased or condemned the easements of the abutting owners, the statute of limitations does not run against its right to institute such condemnation proceedings.

3. SAME—TAKING STREET—PUBLICATION OF NOTICE.
   Under Laws N. Y. 1876, c. 198, § 2, providing that, whenever any land required by a railroad company for the purposes of its road forms a part of any street, the notice to be given of the application to acquire title to such land shall be served by publication, publication is required only when land is to be taken, and not in proceedings to condemn easements, etc., appurtenant to land.

4. SAME—PENDING SUIT FOR INJUNCTION.
   Where a railroad has been built in a street without proceedings had to make compensation to the abutting owners, a pending suit by such owners against the railroad, to restrain the maintenance of the road and for damages, is not a bar to proceedings by the company to condemn the easements of such abutting owners.

**5. SAME—PETITION—ENDEAVOR TO PURCHASE.**

Where the petition in condemnation proceedings alleges that "your petitioner has not been able to acquire title, * * * and is unable to agree for the purchase thereof, * * * and the reason for such inability is," etc., it sufficiently shows that an effort has been made to purchase the interest sought to be condemned.

**6. SAME—PROOF OF ENDEAVOR TO PURCHASE.**

An elevated railroad company, before commencing proceedings to condemn easements in property abutting on a street in which the company had operated its road for 10 years, no compensation having been paid for such easements when the road was built or proceedings had to condemn the same, employed reputable and experienced brokers, who had not before been employed by it to examine the property, and fix the compensation which ought to be paid to the owners. The company then offered to pay the sums so fixed, and allowed the owners 48 hours to make answer. *Held*, that the company in good faith endeavored to purchase.

At chambers. Application by the Metropolitan Elevated Railroad Company relative to acquiring title to land of Augustus Vogt and others.

*Davies & Rapallo, Julien T. Davies,* and *Theo. F. C. Demarest,* for petitioner. *Eugene L. Bushe,* for respondents Augustus Vogt and Abby Huse. *Peckham & Tyler,* for respondents Anna Maria Hoch, Annie Maria Adolphi, Amelia Scholes, and Matilda Von Randohr. *Gratz Nathan,* for respondents Fanny Levy and Alfred B. Dunn. *Cannon & Atwater,* for respondents Abraham Steers and Sylvanus T. Cannon. *Leo C. Dessar,* for respondents John J. Aaron, Henry Van Schaick, and William Sommer. *Crane, Lockwood & Fowler,* for respondents John S. Ferguson, Mary Ferguson, and the Central Trust Company. *Calvin & Breck,* for respondents Robert Morrison and Mary S. Wotherspoon. *Mahoney & Westermayer,* for respondent Catherine Dalton. *F. H. Kellogg,* for respondents Jane Dorland, William Mickens, Samuel Thompson, and John Thompson. *Frederick S. Wait,* for respondent John Mulford. *Charles M. Hall,* for respondent Elizabeth A. Hall.

O'BRIEN, J. Having been heard at the same time, these cases may be disposed of together. Many of the objections raised by answer or affidavit were not mentioned on the hearing or referred to in the briefs, and are so trivial in their character as not to have been seriously put forward, and therefore require no comment. Other objections which present questions of law have been once passed upon by Mr. Justice ANDREWS. *In re Higgins,* Daily Reg. October, 1888. The importance to property owners, however, of some of these latter, which, if sustained, would be fatal to the granting of the petition, and the feeling of the court that after occupying as trespassers the property for years with no disposition to pay damages until compelled by suits, impresses me that now, on the eve of trials forced upon them in such suits, the petitioners should not be allowed this form of relief unless entitled to it by strict statutory right. Such considerations, were this an application in equity, would be sufficient to justify the court in refusing the relief asked. This, however, is a statutory proceeding; and unless authorized by statute, or, if authorized, unless it is shown that the provisions of the statute have been observed, the order asking for the appointment of commissioners should be refused.

1. It is asserted that the statute (chapter 140, Laws 1850) affords no authority for this proceeding after the construction of the railway, its entire scope being limited to the acquisition of property before construction. The case of *Henderson* v. *Railroad Co.,* 78 N. Y. 423, and the permission accorded in the *Story Case,* 90 N. Y. 122, seemingly recognize the right and sustain the decision directly in point of Mr. Justice BARRETT,[1] and Mr. Justice ANDREWS, (*In re Higgins,* October, 1888,) according to the petitioner, after the construction of the railway, the benefit of the act of 1850. It is no longer, therefore, a new question, and until reversed by an appellate court should be followed by judges sitting at special term.

[1] See note at end of next case.

2. It is further contended that, if such right existed, the delay in application waived the privilege, or the statute of limitations applies and bars the right. Assuming, then, that the railway is entitled to the benefit of the statute, it remains to determine whether the statute of limitations is a bar, and, if not, whether all the requirements of the statute have been complied with. It is claimed that the right to maintain this proceeding accrued more than ten years ago, and, if the statute runs, whether we adopt the six or ten years' period is immaterial, since both have expired. This, to my mind, is the most serious question presented, but I am of opinion that the statute of limitations is no bar. This statute prevents, after a certain period, the enforcement of a right. I can recall no case where the statute has been availed of to prevent the fulfillment of an obligation. A proceeding to condemn is to be regarded more as an obligation than as a right, though at present availed of as a privilege, and I think that one entitled to demand the performance by another of an obligation towards him cannot plead the statute or a waiver by laches as a reason why the obligee should not be allowed to perform. This obligation, moreover, is a continuing one, and unless the railway purchases by agreement, or condemns the property by right of eminent domain, it continues to be a trespasser the same as would be an individual under the same circumstances. Until they fulfill this obligation of making "due compensation," the road is liable in damages as a trespasser, and can be enjoined in equity. The right of the property owners to such damages for the past wrongful acts of the railway is fixed, and it is not claimed that these damages are affected by proceedings now taken, to secure for the future, by making compensation, the right to use the property for railway purposes. In the suits brought in equity, though I do not find a case in which the question was directly raised or passed upon, yet the principle is recognized that an opportunity to purchase the fee should be accorded, and in many the judgment gives the alternative of applying under the statute. If my conclusion is incorrect that the statute of limitations is no bar, I fail to see why, in such actions, a property owner would not be entitled to a judgment absolute and without conditions for damages suffered in the past, and an injunction to prevent their recurrence in the future.

3. Another objection made is that the publication required by the Laws of 1876 (chapter 198, § 2) has not been alleged or made. Obviously, publication need not be alleged if it need not be made. The parties in this proceeding were all personally served; but, notwithstanding, if the laws referred to are applicable, the statutory condition should have been fulfilled, and an omission to observe it would be fatal. I concur, however, in the views of Mr. Justice ANDREWS, that publication is only required where land is sought to be taken, and that in this proceeding no land could be taken, "the privileges, easements, or other interests * * * appurtenant to the lot" being solely descriptive of an incorporeal hereditament.

4. It is claimed that, where suits have been brought and are pending, in those instances the pendency of suit is a bar to this proceeding. No owner whose property is embraced in this proceeding has recovered judgment. Notwithstanding the appointment of commissioners, the parties can proceed and take judgment in the actions. One does not interfere with the progress of the other. When the commissioners appointed award the damages, and the same are paid, then, and not until then, will the actions abate. If judgments are recovered in the mean time, these can be enforced. Following, therefore, the decisions of Justices BARRETT and ANDREWS, I have held, in an opinion just handed down, (*In re Hughes and Watson and Sobe*,[1]) that a judgment in equity is no bar, and therefore, *a fortiori*, the mere pendency of an action cannot be.

[1] No opinion.

5. That the petition fails to allege "that any effort has been made to agree for the purchase." The petition, paragraph 9, alleges "that your petitioner has not been able to acquire title," etc., "and is unable to agree for the purchase thereof, * * * and the reason for such inability is," etc. The opinion in the case of *In re Lockport & B. R. Co.*, 77 N. Y. 557, specifies what the petition should state, and shows that this petition alleges sufficient to support it.

6. That the petition does not describe the property sought to be acquired. The same objection was made on a similar petition, and properly disposed of by Mr. Justice ANDREWS. *In re Higgins, supra.*

7. As to the answers filed which raise issues of fact, these are mostly disposed of by applying the rule correctly laid down by Mr. Justice ANDREWS as to the burden of proof. The property owners, in one case, produced no testimony in support of any allegation in their answer, other than the one that no effort was made in good faith to purchase their rights. As to the one case, records relating to character, organization, construction, etc., were offered, but no definite ground was pointed out, nor was it suggested in what respect the railway had failed to fulfill the conditions and requirements imposed by statute and by commissioners pursuant to statute. An allegation that the petitioner has not fulfilled the conditions, etc., would put in issue every act which the railway was bound to perform in order to fully vest it with corporate rights and powers. In a proceeding like this, where the question is, should commissioners be appointed? the petitioner is not obliged to give in detail evidence of compliance with all the *minutiæ* of statutory and commissional regulations. Nor, on the other hand, should counsel, after introducing in evidence records of judgments, etc., and a compilation of laws relating to proceedings both statutory and commissional affecting the railway, in support of a general allegation in the answer, go no further, and neither suggest nor intimate, but leave it for the court to find out, what, if any, requirement of law the petitioner has not fulfilled. There being no definite allegations in the answer on this subject, and evidence being directed to no particular point, it is impossible to determine whether or not the burden was thrown on petitioner. The fact that it was not definitely shown, pointed out, or suggested in what respect the railway failed to comply with all necessary requirements disposes of such issues. It would be useless to consider in detail all the other minor questions raised, which I have examined, and concluded to be without force either in law or unsupported by proof. For instance, "that the verification to petition is insufficient" denial that respondent's easements are required; that the lease of 'May 20, 1879, is a bar.

The main contention on the hearing, upon which both sides in many instances introduced evidence, was as to whether the railway had in good faith endeavored to purchase before commencing these proceedings. The burden of proof was on the railway, and it is important to determine what the statute demands. It requires that the petitioner, being unable to agree, should prove "that it has not been able to acquire title." The court will need to be satisfied that the parties have been unable to agree, and this implies that petitioner, on its part, has tried to agree, which, of course, supposes good faith. In *Re Prospect Park, etc., R. Co.*, 67 N. Y. 371, FOLGER, J., says: "The negotiation which took place * * * was enough to show that it was unable to acquire the title by agreement. * * * That provision of the general railroad law does not mean that it must be impossible to buy the right of way at any price, however large; it means that the owner must be either unwilling to sell at all, or willing to sell only at a price so large as in the good judgment of the agents of the corporations is excessive." Apart from the suits brought by the property owners, in which they seek to recover and place the value of their property at a greater sum than the railway thinks fair, and on that account has joined issue, the evidence in this proceeding shows that

while, as to some, the offers made were accepted, as to the others the parties could not agree. The proof is that the railway employed a firm of reputable brokers of standing and experience, who had not heretofore been employed by it, and requested them to examine the properties in question, and fix the sums which they, in their judgment, deemed to be fair and reasonable compensation to the property owners for the rights sought to be acquired. This they testified fairly, and without suggestion as to amount from the company. Then written offers were made that the company would pay such sums, and 48 hours were allowed to make an answer, and it appears that the parties failed to reply favorably. The shortness of time given to answer might present a serious question, were it not for the fact that the running of the railroad for 10 years in front of the property must have presented the question of the extent of damages to the parties frequently, and it is not unreasonable that, with fixed ideas on the subject, they were in a position within 48 hours to determine whether they would or would not accept. Having determined by experts what, in their opinion, was a reasonable and fair price to pay, and having made offers based upon such experts' judgment, I fail to see how such offers can be regarded as unreasonable, or as not made in good faith. If deemed reasonable by property owners, they would be accepted, and hence no proceeding to condemn would be necessary. That property owners regard them as unreasonable is not, then, the test. Nor is the proof that the price offered was, in the opinion of the owners or their experts, very low. The sole issue is whether the efforts to acquire title by offer and purchase were made in good faith. The fact was shown in these proceedings that some of the property owners have accepted the offers of the road made preliminary to these proceedings. My conclusion, therefore, on this, as on the other questions presented, after careful consideration, is that the petitioner, under the statute, is entitled to maintain the proceedings. Ordered accordingly.