### In re LONG ISLAND R. CO.

### In re MORAN et al.

(Supreme Court, General Term, Second Department.   December 12, 1892.)

1. EMINENT DOMAIN—PLEADING—PETITION.
   In a petition by a railroad company to condemn land, the statement that the owner of the land demands an unreasonable price is a sufficient allegation that the parties have been unable to agree upon a price.

2. SAME—CONDEMNATION BY RAILROAD OF NONCONTIGUOUS PROPERTY.
   Laws 1881, c. 649, amending the general railroad act by limiting the right to condemn land for its earth and gravel to lands that are "contiguous to such railroad, and reasonably accessible to the place where the same are to be used," does not limit the right of railroads to condemn land for other purposes.

3. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—RAILROAD COMPANIES.
   The tunnel act of 1859 provided for the appointment of commissioners to make a contract with the Long Island Railroad Company for ceasing to use steam power on a certain avenue.   Such a contract was made, and the company received the consideration therefor, which was raised by taxing the abutting property.   Held, that said contract did not prevent the legislature from authorizing the company, by the act of April 28, 1876, c. 187, to resume the use of steam on said avenue.

Appeal from special term, Kings county.

Petition by the Long Island Railroad Company to acquire title to certain lands.   Charles Moran, one of the landowners, appeals.   Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Platt & Bowers, (John M. Bowers and J. G. Reid, of counsel,) for appellants.

Hinsdale & Sprague, (E. B. Hinsdale, of counsel,) for respondent.

PRATT, J.   This is an appeal by the owner of property from an order appointing commissioners to appraise land sought to be taken by the petitioner under the general railroad laws of the state.

The first objection urged is that the statement in the petition, that the petitioner had been unable to agree with the owner upon a price for the land, is not sufficient to confer jurisdiction.   This is not valid.   The petition does state as a fact that the owner demands an unreasonable price.   This is a sufficient allegation, under the authorities.   In re New York, W. S. & B. Ry. Co., 64 How. Pr. 216; In re Suburban Rapid Transit Co., 38 Hun, 553; In re Metropolitan El. R. Co., (Sup.) 12 N. Y. Supp. 502, 506.   We think the petition was sufficient in form and substance.   It was verified as required by the rules of court, and stated all that was possible to be stated, under the circumstances of the case.

Neither is there any merit in the objection that the premises sought to be condemned were not contiguous to the petitioner's railroad.

1. The statute does not require contiguity, except in special cases, of which this is not one. The provision for contiguity was brought into section 21 of the general railroad act by the amendment of 1881, c. 649. Prior to that time the section stood as amended by chapter 224 of 1877. The amendment of 1881 interpolated the following clause:

"Or for filling any structures of, or for constructing, widening, or completing therewith or thereon any embankment, or the roadbed of such railroad, when thereby greater safety or permanency may be secured; and such lands shall be contiguous to such railroad, and reasonably accessible to the place where the same are to be used for such purpose or purposes."

This amendment gives the right to condemn land for earth and gravel for embankments, which the act prior to 1881 did not authorize, (Railroad v. Gunnison, 1 Hun, 496,) but limits the right to lands which are contiguous to the road, and "reasonably accessible to the place where the same are to be used." These two adjectives, "contiguous" and "accessible," clearly go together; and the latter, with the language which qualifies it, implies that the property which is condemned is to be carried away. The phrase "reasonably accessible to the place where the same are to be used" is utterly meaningless, as applied to a piece of real estate which is to be used as such. Therefore the interpolation of 1881 stands by itself, and the requirements of contiguity and accessibility apply only to cases where the land is taken for earth and gravel. But the land sought is contiguous, in fact, unless, as claimed by the landowner, the petitioner has no title to the land now used as a railroad on Atlantic avenue, and this is the main contention in the case.

It is conceded, or not denied, that petitioner is now using steam for propelling power on Atlantic avenue, and desires to condemn the land in question for the same purpose. It may well be said that this question is not involved in this proceeding, for the reason that the petitioner would have a right, as a railroad using steam, to condemn land for its use, although upon this part of its road it intended only to use horse power; but this is too technical, for the reason that in part it does intend to use steam, and these proceedings are instituted for that purpose. Neither is it very material what were the original powers granted to the petitioner in its charter, as to determining by what force its cars should be propelled. It is plain that before the passage of what is called the "Tunnel Act," in 1859 and 1880, the petitioner had a right to use steam; and the whole question here must turn upon the effect to be given this act last referred to, and the act of April 28, 1876, c. 187. The tunnel act provided for the appointment of commissioners to make a contract with the Long Island Railroad Company for the closing of the tunnel and the withdrawal of the use of steam on Atlantic avenue. Such a contract was made with the Long Island Railroad Company, and it gave its assent thereto, and received the consideration therefor; and thereby its right to use steam on said avenue ceased, and all laws allowing said company to use steam within the corporate limits of the city of Brooklyn, by the force of said act and the confirmation of the report

of such commissioners, were repealed. The appellant here claims that the proceedings had the effect to permanently abolish the right on the part of the petitioner to use steam in the city of Brooklyn. On the other hand, the petitioner claims that the act of April 28, 1876, restores the right to use steam, notwithstanding the tunnel act and the agreement thereunder. I think it may well be contended that here was a contract between the landowner, represented by the state, i. e. commissioners, on one hand, and the railroad company on the other, by which the railroad was to be and was paid for abandoning the use of steam on the Atlantic Avenue road, for the benefit of the abutting owners, who were taxed for such benefit. The petitioner's contention is that, as matter of law, the taxes or assessments were laid and collected by the legislature under the taxing power, and if the legislature saw fit it could, the next day after the collection of the assessment, authorize the railroad company to again use steam on the avenue; and such seems to be the course of the decisions upon that subject. The fault, if any, belongs to the lawmaking power. There can be no profit in discussing the various decisions that have been made by the courts during the last 15 years upon the question whether the petitioner has the right to use steam on Atlantic avenue, as they are all one way, and that favorable to the railroad company. People v. Long Island R. Co., 30 Hun, 510; People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 75; Barnes v. Long Island R. Co., (Sup.;) Geirs v. Same, (City Ct.;) Milton v. Same, (United States Circuit, E. D.;) and other cases not reported. If this was a new question, we well might hesitate to adopt such a doctrine, without a careful consideration of the arguments suggested by the appellant. After such a long and uniform course of decisions upon a question, no reversal, except by the court of last resort, ought to be attempted. Order affirmed. All concur.