### MEAD v. NEW YORK EL. R. CO. et al.

(Superior Court of New York City, Special Term. July, 1893.)

ELEVATED RAILROADS—WAIVER OF RIGHT TO CONDEMN EASEMENTS.
Where an elevated railroad company, in an action to enjoin it from operating its road in the street on which plaintiff's property abuts, and for damages. answers, notices the cause for trial, and appears on the call of the calendar, but no question as to fee damages can arise on the issues presented by the pleadings, defendant does not thereby waive its right to condemn plaintiff's easements in the street.

Action by Frederick Mead against the New York Elevated Railroad Company and the Manhattan Railway 'Company to enjoin the operation of defendants' road in the street on which plaintiff's lot abuts, whereby plaintiff was deprived of his easements in such street. Defendants afterwards instituted a proceeding to condemn plaintiff's easements, and plaintiff moves for an injunction against the condemnation proceeding on the ground that defendants had waived their right to maintain such proceeding. Denied.

Evarts, Choate & Beaman, (Joseph H. Choate, of counsel,) for plaintiff.

Davies & Rapallo, (Julien T. Davies and Alexander S. Lyman, of counsel,) for defendants.

GILDERSLEEVE, J. This action was commenced in November, 1877, for the purpose of enjoining the construction of the elevated railway in front of plaintiff's premises in Pearl street, in this city. It slumbered, to await the result of a similar proceeding in the Story Case, 90 N. Y. 122; and, after the failure to secure preliminary relief in that case, it awaited the disposition of the Dutch street question. In October, 1889, leave having been obtained, the plaintiff served a supplemental complaint, upon which the motion under consideration is made. In the amended complaint the plaintiff alleges that the defendants had no right to build and operate their railroad through Pearl street, in front of the plaintiff's premises, against his protest, "without first taking proceedings to condemn or acquire for the use of said railroad the title, interest, and property of the plaintiff in Pearl street, in front of his said premises;" and he demands that defendants be perpetually enjoined from operating their railroad in front of plaintiff's premises "until they shall have made to the said plaintiff proper and adequate compensation for the damage and injury already inflicted and hereafter

to be inflicted upon him by reason of the construction," etc.   In January, 1893, the defendant the Manhattan Railway Company instituted proceedings under title 1, c. 23, of the Code, known as the "Condemnation Law," to acquire title to the easements appurtenant to the plaintiff's premises described in the supplemental complaint.   This motion is for an order enjoining the Manhattan Railway Company from further prosecuting the condemnation proceeding.   It is made under section 604 of the Code, which reads as follows:

"An injunction order may also be granted in an action: (1) Where it appears by affidavit that the defendant, during the pendency of the action, is doing or procuring or suffering to be done, or threatens, or is about to do or to procure or to suffer to be done an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom.

It is conceded, as I understand the plaintiff's position, that the defendants' railroad was constructed and is operated pursuant to legislative and municipal authority, and that the defendants have been given the full power of eminent domain.   By the affidavits in support of the motion, it appears that both of the defendants have answered the supplemental complaint; that the cause has been duly noticed for trial, and has been more than once upon the day calendar of the equity branch of this court, and answered "Ready" by both sides.   It is contended by plaintiff that by these acts the defendants have conclusively elected to accept the same relief which they might originally have secured by taking condemnation proceedings, and that they have thereby waived their constitutional right to exercise the power of eminent domain.   The answer to this contention is that it cannot be said that the fee damage will necessarily be determined upon the trial of this action.   The scope of this action does not impose upon the court the duty to the plaintiff of fixing a sum as compensation which the defendants may pay to avoid the operation of an injunction.   The character of these equitable actions was ably discussed by my learned associate, Judge Freedman, in Eggers v. Railway Co., (Super. N. Y.) 18 N. Y. Supp. 181, when considering an application to frame issues for a jury trial under the provisions of section 970 of the Code, as then existing.   It was held that no question arose upon the pleadings as to the value of property taken, or as to the sum which the court might name as an alternative to the injunction.   We quote from the opinion as follows:

"In the Galway Case, 28 N. E. Rep. 479, recently decided by the court of appeals, it was held that the provision for the payment of the fee damage. as equivalent of the property taken in avoidance of the injunction in this class of cases, is purely a matter of favor to the defendants; that such payment is at the option of the defendants, and not at the option of the plaintiff; and that neither party has a right to compel the court to make the provision. * * * Moreover, making provision for the payment of the fee damage, as the equivalent of the value of the property taken in avoidance of the injunction, at the option of the defendants, is not the only provision which a court of equity may make as an act of grace and favor to the defendants.   Nor is it necessary that any determination of the extent of the fee damage should

be made in the action. All the court is bound to do is to ascertain and determine that the fee damage is sufficiently substantial to entitle the plaintiff to equitable relief. The court may then grant an absolute injunction against the maintenance and operation of the elevated railway, and, as an act of grace and favor to the defendants, stay the operation thereof for a reasonable time to enable the defendants to acquire title to the property taken by condemnation proceeding."

Mr. Justice Barrett, of the supreme court, in Underhill v. Railway Co., 18 N. Y. Supp. 43, in disposing of an application like the one above referred to, expressed views similar to the foregoing, and added:

"No question of fee damage is directly involved, or can directly arise on the trial of these present issues."

See, also, Stroub v. Railway Co., (Super. N. Y.) 15 N. Y. Supp. 135, and Blumenthal v. Railroad Co., (Super. N. Y.) 17 N. Y. Supp. 481.

When the equity court does fix the sum to be paid as an alternative, it is usual to provide in the judgment that the injunction shall be inoperative in any of three events, viz.: (1) The acquisition of the plaintiff's property by purchase; (2) the acquisition of the same by due process of law; and (3) the payment of the sum fixed as an alternative. The defendants are not bound by the judgment to tender the sum fixed as an alternative, and, if tendered, the judgment imposes upon the plaintiff no obligation to accept it. A conditional injunction, which becomes inoperative by the payment of the sum fixed by the court, is not binding upon the parties; and the determination of the value of the property is not res adjudicata, and a bar to the maintenance of the constitutional proceedings to condemn. In re Metropolitan El. R. Co., (In re Watson,) 58 Hun, 563, 12 N. Y. Supp. 859. In Watson v. Railroad Co., (Super. N. Y.) 8 N. Y. Supp. 533, the court fixed the value of the easements at $12,000, and the only provision in the judgment was that it should cease to operate if the defendants paid the plaintiff the sum fixed by the court. Before the injunction operated, commissioners of appraisal appraised the plaintiff's easements at $6,500, and the defendants acquired title by the payment of that sum into court; and the general term held that the judgment had, in substance, been complied with, and that the injunction should be dissolved. The defendants in this action have made no request to the court to fix the amount of fee damage, and they may not upon the trial. The court may not undertake to decide the question of fee damage, and send it to a jury, or grant an injunction with a provision that it be suspended for a certain number of months to permit the defendants to take condemnation proceedings. Since either of the results above named may lawfully occur, and especially since, as we have seen, the defendants may lawfully take condemnation proceedings after judgment herein, and reap the benefit thereof, we cannot hold that by answering the amended complaint, noticing the case for trial, and answering "Ready" upon the call of the calendar, they waived their constitutional right to take condemnation proceedings.

It is further claimed on behalf of the plaintiff that "the relief to be obtained in the condemnation proceedings is the same as that to be obtained in this action," and that to permit the defendants to continue the condemnation proceedings would be violating the cardinal rule of equity which requires that the court first obtaining jurisdiction of the subject-matter shall hold it exclusive of all other courts. It appears from what we have already said that this claim is without foundation. The relief, within the scope of the pleadings herein, and in the condemnation proceedings, for the reasons above given, is not the same. The condemnation proceeding is not another proceeding pending for the same cause, and to procure the same relief as this action. We can find no authority for holding that unreasonable delay in taking condemnation proceedings deprives the defendants of that right. It may, we think, be done at any time before the defendants have otherwise acquired title to the property taken. It is urged that when defendants have acquired the plaintiff's property by condemnation proceedings, inasmuch as the plaintiff's right to recover past damages is incidental only to the equitable relief, the jurisdiction of this court will be so impaired that this action can no longer be sustained in equity, and the defendants' past damages will be limited to the amount which might be recovered in an ordinary action at law. We cannot agree with this contention. An equity court never loses jurisdiction once obtained. Having acquired jurisdiction, it will determine the legal rights involved. The issues must be decided upon the pleadings as they now stand. The plaintiff is entitled to injunctive relief, and the court has jurisdiction to grant it; and, as incidental to the right to equitable relief, the plaintiff has the right to recover past damages. This right the defendants cannot defeat by partly satisfying the plaintiff's claim. Renwick v. Railroad Co., (Super. N. Y.) 15 N. Y. Supp. 149. Could this action be held to be one for damages only,—and such plaintiff contends it practically is,—the argument of plaintiff that the condemnation proceedings recently commenced constitute a proceeding for the same relief as is sought here would have some force. It is the duty of courts to jealously guard and protect their equity powers, and not permit them to be trespassed upon, or in any degree impaired. We should then have to consider the adequacy of plaintiff's remedy in the condemnation proceeding, and also the grave point raised by defendants' counsel, that "court is without jurisdiction to restrain defendants from the exercise of a right and a duty, namely, the exercise of the power of eminent domain." It must be admitted that this court has generally adopted, as the alternative provision for relief, the payment of the permanent damages it has fixed. These damages are awarded to the same extent and for the same easements as the compensation given in a special proceeding for the condemnation of land under the law of eminent domain. The court of appeals said, in the American Bank Note Company Case, 129 N. Y. 252, 29 N. E. Rep. 302: "Such a proceeding in each case ends in the same substantial redress. The form is different, but

the result is identical." This is due, not to any radical change in equity law practice, or to any change in the jurisdictional powers of courts of equity, but to the disregard by courts of equity of the absolute rights of owners of property upon which defendants have trespassed. The alleged justification therefore rests in the public character of the employment of the defendants as common carriers of passengers. The staying by injunction of the operation of defendants' railroad for a single day would be such a hindrance to travel as would constitute a great public injury. Mr. Justice Barrett very aptly said in the Underhill Case, above referred to: "The defendants' wrong is hopelessly blended with public interest." Judge Peckham said, in the opinion of the court of appeals in the Roberts Case, 128 N. Y. 475,[1] "It is idle to talk about a company situated like this corporation submitting to an injunction, and ceasing to operate its road through the avenue for a single day." While it must be conceded that actions like this are practically actions for compensation only, it is nevertheless true that no question of fee damage is directly involved, or can directly arise, on the trial of the issues presented by the pleadings herein. No compensation to the plaintiff for fee damage can be ascertained and awarded herein, except at the request of the defendants. They may never make the request. The condemnation proceeding is not an act by defendants in violation of plaintiff's rights. The motion is denied, with $10 costs.

[1] 28 N. E. Rep. 486.