BENJAMIN et al. v. BROOKLYN UNION EL. R. CO. et al.

(Circuit Court, E. D. New York. December 4, 1902.)

1. FEDERAL COURTS—STAYING PROCEEDINGS IN STATE COURT—PRIORITY OF JURISDICTION.

Where a property owner, entitled to compensation under the law of New York for the building and maintenance of a street railroad in front of his property, has been guilty of such laches in permitting the building and maintenance of such road without compensation having been made that he is not entitled to enjoin its continuance, he is still entitled to maintain a suit in equity for an injunction as an alternative remedy in case the railroad company fails to pay compensation as fixed by the court; but the commencement of such a suit in a federal court does not give that court such exclusive jurisdiction as will authorize it to stay proceedings subsequently commenced by the railroad company in a court of the state to condemn the easement, in the exercise of the power of eminent domain conferred upon it by the state, since that proceeding does not deprive the court of equity of the power to award any past damages to which complainant may be entitled.

In Equity. On motion to stay proceedings in a state court.

Edward Wade Benjamin and Frank Benjamin, in pro. per.
George V. S. Williams (Alex. S. Lyman, of counsel), for defendants.

THOMAS, District Judge. The bill charges that the complainants in 1899 acquired title to certain land in the city of Brooklyn, by devise of Wade, to whom conveyance was made in 1887 by Coyle, whose title antedated 1885, when there was "unlawfully erected without claim of right" an elevated railroad along Fulton street, past and over part of the property by the Kings County Elevated Railroad Company, and that in 1899 the Brooklyn Union Elevated Railroad Company, by consolidation with the first-named company, "acquired all the franchise and property of the former," and at a later time sold in fee or leased the same to the defendant the Brooklyn Heights Railroad Company. The bill further charges that the companies severally have operated the railway, and by smoke, noise, and obstruction of light and air impaired the value of complainants' property to the extent of over $5,000; that none of the said railways have caused the land to be condemned, or acquired the right to do the acts charged. The prayer is as follows:

"And your orator further prays that the said Brooklyn Union Elevated Railroad Company or the Brooklyn Heights Railroad Company be decreed to hold the right of easement in said property, subject to the payment of a just and reasonable compensation, and said compensation to be fixed by the court, and to pay the same, with interest thereon from the time of taking

---

¶ 1. Federal courts enjoining proceedings in state courts, see notes to Gardner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575.

the property, and also damages resulting from the use as aforesaid, and your orators to have execution of such decree and all other just and equitable relief in the premises."

After the bill was filed, the Union Elevated Railroad Company commenced proceedings in the Supreme Court of the state of New York to condemn the complainants' right of easement for the purpose of its railway, upon making compensation therefor, pursuant to the statute of the state of New York, which proceedings the present motion seeks to enjoin permanently, to the end that the complainants may obtain the relief demanded in their bill.

The complainants' position is that in the present suit in equity (1) they may not ask for a permanent injunction against the maintenance and operation of the railway in front of their premises, and over the street on which it abuts, because they have been guilty of laches (New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820); (2) that they may maintain such suit to recover compensation for their land; (3) that such compensation should be fixed as of the time of the company's appropriation thereof, with interest from that date. The argument is: The complainants have from 1885 to 1902 permitted the operation of the railway on the street in front of their premises. This precludes them from enjoining its continuance; but the same laches qualifies them, upon the authority of New York City v. Pine, to invoke a court of equity to award them compensation as of the time when their cause of action arose, and interest on such compensation during the time their laches was perfecting. If there had been no laches, the bill would lie for an injunction; the laches existing, does the bill lie for compensation; that is, simply for a decree for money? This would enable a person, disabled by laches from filing a bill for injunctive relief, to maintain a suit in equity in substitution for an action at law, which would be an unmerited reward of indolence. But it is earnestly contended that this is the holding in New York City v. Pine. The landowner in that case charged that the city of New York had tortiously taken his property (impairment of riparian rights) situated in Connecticut, and that it had and could have no public authority so to do, but stood in the position of a mere trespasser, and this trespass the complainant below sought to enjoin, and thereby prevent the city from taking the water, and also from making compensation either in the suit or in any proceeding. The complainant invoked the time-honored rule that, when the defendant was a mere trespasser, a court would enjoin absolutely, but would not make the injunction conditional upon payment of compensation found, and it was so held by the Circuit Court of Appeals. But the Supreme Court considered that, when the complainant was guilty of laches in asserting his right of property and permitting the defendant to construct its works at a large expense, his remedy by injunction would be allowed only in case the defendant failed to pay the compensation fixed by the court. This appears from the opinion, wherein it is directed that the case be remanded to the circuit court "with instructions to set aside its decree and to enter one providing for an ascertainment, in the way courts of equity are accustomed to pro-

ceed, of the damages, if any, which the plaintiffs will suffer by the construction of the dam and the appropriation of the water, and for which the defendant is legally responsible—a proposition upon which we express no opinion—and fixing a time within which the defendant will be required to pay such sum, and that upon the failure to make such payment an injunction will issue as prayed for; and, on the other hand, that upon payment a decree will be entered in favor of the defendant. If the plaintiffs shall prefer to have their damages assessed by a jury, leave may be given to dismiss the bill, without prejudice to an action at law." The result of the decision was to remit the complainant to the rights commonly accorded by the courts of the state of New York, to persons seeking to restrain the operation of elevated railways over streets, to the injury of easements to abutting property. Such are the rights of the complainants in the present suit. The suit is essentially for an injunction, avoidable by payment of the compensation fixed; but such decree neither carries the title to the railway company, nor is it enforceable by execution.

But the vital question upon this motion is whether this court gained such exclusive jurisdiction that the railway company, which is an agency of the state, may not exercise the power of eminent domain conferred upon it by the sovereign power. Such a holding would mean that if a public corporation, authorized to operate a railway and acquire property therefor, appropriate such property, it cannot exercise the power of eminent domain after a bill has been filed by the owner to recover compensation, and, in lieu of its payment, for injunctive relief. Such a rule would limit the right of the state, acting through its enabled agents, to exercise one of its great prerogatives, and deprive it thereof, unless its exercise anticipated the owners coming into a court of equity. The magnitude of this constraint upon the right of a public agent of a sovereign state to take property upon making due compensation in the manner provided by it is obvious, and this court should not approve the contention, unless its power and duty so to do clearly appears. The practice in the courts of the state of New York furnishes no authority for such holding. The law respecting the rights and remedies of abutting owners has progressed for over 30 years, and has been applied in a great number of instances; and while courts of equity have, in cases numbering into thousands, afforded a remedy where the railway has not acquired title, yet in no instance has any court stayed affirmative action by the railway company pending suit by the owners of the property involved. Proceedings for condemnation and suits in equity have proceeded pari passu, and each party has been left to enforce the remedy that the law provided. Indeed, in the case that declared the right of abutting owners to compensation (Story v. Railway Co., 90 N. Y. 122, 179, 43 Am. Rep. 146), the Court of Appeals directed suspension of the injunction "until the defendant has had a reasonable time after this decision to acquire the plaintiff's property by agreement, or by proceedings to condemn the same." In Mead v. Railway Co., 24 N. Y. Supp. 908, the Superior Court of the city of New York refused to restrain proceedings for condemnation at the instance of the property owner, who had filed previously the usual bill in equity, while in Re Metropolitan

El. Ry. Co. (Sup.) 2 N. Y. Supp. 278, 284, and 12 N. Y. Supp. 502, 504,. it was decided that the pendency of a suit in equity was not a defense to such proceedings. The whole current of practice and authority in the state of New York indicates the judicial disposition to leave undisturbed the exercise of this right on the part of public corporations regarded as mere arms of the state itself. The present question is not whether the federal court has power to furnish a remedy in equity, but whether it will suspend the exercise of the power of eminent domain. The complainants clearly establish their right to come into equity. Indeed, the right is undoubted, but the remedy afforded the railway company for acquisition of the title and ascertaining and making due compensation therefor remains. The complainants vigorously assert that this court is the more favorable tribunal, inasmuch as it will award compensation as of the time of entry, with interest thereon,. while in the proceedings under the state statute the compensation will be as of the date of the award. Assuming that the complainants' contention is correct, it furnishes no ground for depriving the railway company of the ability vested in it by the state. The allowable suit in equity is not primarily to recover compensation, but to restrain the invasion of the complainants' rights, and the ascertainment of compensation is incidental, and its payment an alternative. The court will not enter a decree for compensation, but for an injunction, if the ascertained compensation shall not be paid. When the suitor asks for damages alone, he is relegated to his action therefor, and his laches cannot convert a court of equity into a court of law. The railway company has deferred proceedings for many years; the complainants have deferred action equally long. The law has furnished them at all times a remedy for damages for use and occupation, and concurrently a remedy against the continuance of the invasion. They have not availed themselves of either remedy until the present bill was filed. Meantime the statute of limitations has run against a portion of the claim for damages for occupation. They would avoid the embarrassment caused by their delay by recovering compensation as of the date of the first occupation, with interest, upon the theory of an implied contract or some rule of damages that does not accord with that obtaining in the courts of the state. It is not easily apparent that the complainants can predicate their cause of action upon an implied contract to pay, accruing to them in 1885, upon the theory that such contract is subject to no limitation. But it is not necessary to consider what rule of damages the complainants may invoke. Their long neglect to assert a right does not increase their equity to such an extent that this court should stay the exercise of the power of eminent domain to the end that they may obtain advantages in this court, that would fail in part as to past damages if the proceedings for condemnation be continued. If it shall appear upon the trial that the company has obtained the title through such proceedings, this suit may be continued, at least for the purpose of ascertaining such past damages for use and occupation as the law permits.

These views require that the motion to stay the proceedings of the defendant railway company should be denied.